**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| Michael Friello, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KOVO+ (USA), INC.,<br><br>Defendant. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Michael Friello ("Plaintiff"), individually and on behalf of all others similarly situated, asserts the following against Defendant Kovo+ (USA), Inc., ("Kovo" or "Defendant") based on personal knowledge, where applicable, information and belief, and the investigation of counsel.

## INTRODUCTION

1. This class action arises from Kovo's failure to properly secure and safeguard sensitive Personally Identifiable Information ("PII") and Protected Health Information ("PHI") entrusted to it by Plaintiff and Class Members, and its failure to provide timely, accurate, and adequate notice that such information had been accessed and acquired by an unauthorized third party. Defendant Kovo is a healthcare billing and revenue-cycle technology company that provides billing-as-a-service and revenue cycle management to medical providers and health systems. As such, Defendant stores and processes highly sensitive personal identifiable information regarding patients and their insurance coverage.

2. On or about September 5, 2026, a cybercriminal group identifying itself as "Pear" reportedly posted a claim on a dark web leak site asserting responsibility for a cybersecurity incident involving Defendant. As of the filing of this Complaint, Defendant has not publicly

confirmed the incident, nor has it disclosed the specific categories of information compromised or the precise dates of the intrusion.

3. On information and belief, the unauthorized third party gained access to Defendant's computer systems and obtained sensitive data in or around September 2026. The specific duration of the intrusion remains unknown, and Defendant failed to implement effective means to prevent, detect, or stop the breach, thereby allowing the unauthorized actor unrestricted access to Plaintiff's and Class Members' private information.

4. The categories of private information potentially exposed in this Data Breach have not been confirmed by Defendant. However, given Defendant's role as a healthcare billing vendor, it is alleged that the compromised data included, but is not limited to, patient names, dates of birth, insurance information, billing records, and other data used in claims processing.

5. Plaintiff and Class Members have suffered and will continue to suffer injuries as a direct result of the Data Breach, including financial losses caused by the misuse of their Private Information; the loss or diminished value of their Private Information; lost time associated with detecting and preventing identity theft; and an immediate, imminent, and heightened risk of identity theft, fraud, and credit damage.

6. Plaintiff brings this action individually and on behalf of a Class of similarly situated individuals against Defendant for negligence, negligence per se, breach of implied contract, and unjust enrichment, arising from Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures; and (iv) timely notify Plaintiff and Class Members of the Data Breach.

7. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of himself and all similarly situated persons whose Private Information was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

8. Plaintiff Michael Friello is a natural person residing in New York State, who is a patient of a healthcare provider that uses Defendant's billing or revenue-cycle services and whose personal information was exposed in the cybersecurity incident involving Defendant.

9. Defendant Kovo+ (USA), Inc., formerly known as MedWorxs, Inc., is, on information and belief, a Colorado corporation with its principal place of business at 1235 Menomonie Street, Suite B, Eau Claire, Wisconsin 54703. Defendant provides healthcare billing and revenue cycle management services within the Kovo group.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs. The proposed Class contains more than 100 members, and at least one Class Member is a citizen of a state different from the Defendant, establishing minimal diversity under 28 U.S.C. § 1332(d)(2)(A).

11. Venue is proper under 28 U.S.C. §§ 1391(b)(1), (c)(2), and (d) because Defendant, the sole named defendant, is subject to personal jurisdiction in this District based on its principal place of business here and therefore resides in this District for venue purposes.

## FACTUAL BACKGROUND

12. Defendant Kovo is a healthcare billing and revenue-cycle technology company that provides billing-as-a-service and revenue cycle management to medical providers and health systems.

13. As a custodian of sensitive patient and provider data, Defendant processes claims data, insurance information, and patient billing records for numerous provider clients.

14. On or about September 5, 2026, a cybercriminal group identifying itself as "Pear" reportedly posted a claim on a dark web leak site asserting responsibility for a cybersecurity incident involving Defendant. Pear threatened to publish the data unless a company representative contacted the group.

15. The posting alleged that Defendant was the target of a ransomware attack, specifically a tactic known as extortion-only ransomware where data is exfiltrated and payment is demanded without necessarily encrypting the victim's systems.

16. As of the filing of this Complaint, Defendant has not publicly confirmed the incident, the specific date the underlying intrusion occurred, or the precise scope of the data accessed.

17. The specific categories of information potentially exposed in this incident have not been publicly disclosed or confirmed by Defendant.

18. Given the nature of Defendant's business, the data at risk in an incident of this type could include patient names, insurance and billing information, and other data used in claims processing, but it is not yet known which, if any, of these categories were actually involved.

19. Defendant's failure to publicly confirm the incident or disclose the specific data categories has left Plaintiff and other affected individuals without critical information necessary to assess the risk of identity theft or financial fraud.

20. Plaintiff and Class Members are patients of healthcare providers that utilize Defendant for billing or revenue-cycle services, and their personal information passes through Defendant's systems.

21. A single incident at a vendor-level system like Defendant's can potentially touch the records of patients across many different medical practices, creating a broad pool of exposed information.

22. Plaintiff and Class Members face a substantial risk of identity theft and financial fraud given that their private information may have been accessed and is now potentially available on the dark web.

23. The lack of specific notification regarding the data categories and the timeline of the breach has prevented Plaintiff and Class Members from taking timely and effective mitigation measures, such as placing fraud alerts or credit freezes, or monitoring for specific types of fraudulent activity.

24. Plaintiff and Class Members have suffered and continue to suffer the loss of privacy and the opportunity to control how their private information is used, as well as the anxiety and distress associated with the potential misuse of their sensitive healthcare and financial data.

25. Defendant's failure to implement adequate security measures to prevent the intrusion and its failure to provide timely and specific notice of the breach have caused Plaintiff and Class Members to incur damages, including the cost of monitoring their financial accounts and credit reports, and the ongoing risk of future identity theft.

**A. Criminal-Market Value of Compromised Data**

26. On or about September 5, 2026, a cybercriminal group identifying itself as "Pear" publicly listed Kovo on a dark web leak site, claiming responsibility for a cybersecurity incident involving the company's systems. This posting served as a public declaration of the group's

possession of data extracted from Kovo, indicating that the compromised information was being offered for sale or distribution within criminal marketplaces. Subsequent public reporting in late September 2026 described an underground advertisement for approximately 2.7 terabytes of data allegedly obtained from Kovo. The seller claimed that the data included personal and health information relating to millions of patients, as well as financial records.

27. The listing of Kovo on a dark web leak site demonstrates a specific demand for the data held by the company, as such platforms function as venues where stolen information is monetized through direct sales or extortion. The group's reported tactic of exfiltrating data and demanding payment without encrypting the victim's systems further confirms that the stolen information was treated as a commodity with immediate market value to the perpetrators.

28. The data exposed in this incident is inherently monetizable due to the nature of Kovo’s business as a healthcare billing and revenue-cycle technology provider. Although the specific categories of information have not been publicly confirmed by Kovo, the company's role in processing claims data, insurance information, and patient billing records for numerous medical providers means the stolen data likely includes sensitive health records and personal identifiers that command a premium price in criminal markets.

**B. Continuing Exposure and Misuse Risks**

29. Once stolen, the Plaintiff's and Class Members' personal information may be sold on the dark web or used for identity theft and financial fraud. This risk is acute given that the cybercriminal group known as Pear reportedly claimed responsibility for the incident involving Kovo on a dark web leak site in September 2026.

30. The persistence of this risk is compounded by the nature of the data entrusted to Defendant. Companies that process medical billing and patient revenue data on behalf of healthcare providers have a responsibility to safeguard that information, and a failure to do so

leaves patients vulnerable to long-term misuse, as stolen data may be replicated, resold, or held for future exploitation.

31. The specific categories of information exposed remain unknown as of this writing, but given the Defendant's role in handling claims data, insurance information, and patient billing records, the potential for fraud is significant. The Plaintiff and Class Members face the imminent injury of actual and/or potential fraud and identity theft resulting from their private data being placed in the hands of ill-intentioned hackers.

32. In addition to the risk of economic harm, the Plaintiff and Class Members face the burden of monitoring their financial accounts, insurance statements, and credit reports for unauthorized activity. This ongoing mitigation effort, which may include placing fraud alerts or credit freezes, is necessary to protect against a lifetime of identity theft and misuse that is to come, as the stolen data remains subject to further injurious breaches so long as Defendant fails to undertake appropriate measures.

**C. Breach Notification, Timing, and Adequacy**

33. On or about September 2026, a cybercriminal group identifying itself as "Pear" reportedly posted a claim of responsibility for a cybersecurity incident involving Defendant Kovo on a dark web leak site, yet Defendant has not publicly confirmed the incident or the specific date the underlying intrusion occurred.

34. As of the filing of this Complaint, no formal notification to affected clients or patients has been publicly identified, and the specific categories of information potentially accessed or exposed have not been publicly disclosed or confirmed by Defendant.

35. Because Defendant has not confirmed the incident or provided a formal notification timeline, it remains unknown whether any notice was sent to affected individuals within the timeframes required by applicable state or federal breach notification laws.

36. Plaintiff and Class Members have been advised to monitor financial accounts, insurance statements, and credit reports for unauthorized activity, and to consider placing fraud alerts or credit freezes, yet no official mitigation services or specific guidance regarding the scope of the breach have been provided by Defendant.

**D. Data-Security Safeguards and Regulatory Expectations**

37. Upon information and belief, an entity that handles sensitive personal information, including healthcare billing and revenue-cycle data, is expected to employ reasonable administrative, technical, and physical safeguards appropriate to the nature and sensitivity of that information. The occurrence of a breach alone does not establish the failure of any particular technical or administrative control, but the Defendant's handling of such data carries a baseline duty to implement security measures commensurate with the risk of unauthorized access.

38. The Defendant, a healthcare technology company processing patient billing and revenue data, was reportedly named by a cybercriminal group known as Pear on a dark web leak site in September 2026, with the incident involving ransomware tactics. While the specific categories of information exposed remain unknown and the precise date of the underlying intrusion has not been confirmed by the Defendant, the reported unauthorized access to systems holding sensitive client data suggests a failure to maintain safeguards adequate to prevent such an event.

## CLASS ALLEGATIONS

39. Plaintiff brings this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and/or (c)(4) as representative of the following nationwide class:

> All individuals whose private information was or may have been accessed, acquired, or disclosed without authorization as a result of the cybersecurity incident involving Defendant Kovo+ (USA), Inc. which was reported in September 2026.

40. Numerosity. The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of Class Members is unknown and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiff estimates that the Class is comprised of millions of Class Members. The Class is sufficiently numerous to warrant certification.

41. Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class Members, had private information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and his claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members, which was caused by the same misconduct by Defendant.

42. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

43. Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions which predominate over any questions affecting only individual Class Members, including: (a) whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; (b) whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations; (c) whether Defendant's storage of Plaintiff's and Class Members' private information was done in a negligent manner; (d) whether Defendant had a duty to protect and safeguard Plaintiff's and Class Members' private information; (e) whether Defendant's conduct was negligent; (f) whether

Defendant's conduct violated Plaintiff's and Class Members' privacy; (g) whether Defendant took sufficient steps to secure individuals' private information; (h) whether Defendant was unjustly enriched; and (i) the nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled. Information concerning Defendant's policies is available from Defendant's records.

44. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

45. Plaintiff reserves the right to amend the Class definition above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements.

46. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be

no significant manageability problems with prosecuting this lawsuit as a class action. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

## TOLLING OF THE STATUTES OF LIMITATIONS

47. Any applicable statute of limitations has been tolled by the "delayed discovery" rule. Plaintiff did not know, and had no reasonable way of knowing, that his Private Information unlawfully disclosed to third parties because Defendant kept this information secret.

48. The earliest Plaintiff or a reasonable user of Defendant's services could have learned of the alleged conduct was in September 2026, when a cybercriminal group known as "Pear" reportedly posted a claim regarding the incident on a dark web leak site.

49. Prior to September 2026, Defendant made no public disclosures or other indications that would inform a reasonable user that unauthorized third parties had accessed and acquired Plaintiff's individually-identifiable information from Defendant.

50. The technical nature of the alleged intrusion and the lack of any visible indicators prevented the discovery of the full scope of Defendant's conduct. No disclosures or visible alerts on Defendant's systems or billing portals would have alerted a reasonable consumer to the disclosure of their data.

51. Plaintiff and the Class Members first learned of Defendant's conduct through the public reporting in September 2026 and subsequent investigation conducted in preparation for this action.

52. Defendant's failure to disclose the true nature of the data handling practices and the lack of actual notice to Plaintiff until the public report in September 2026 tolled the applicable statutes of limitations.

53. For these reasons, all applicable statutes of limitation have been tolled based on the delayed discovery rule, and Defendant is estopped from relying on any statutes of limitations in defense of this action.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Negligence**
**(On Behalf of Plaintiff and Class)**

54. Plaintiff alleges that Defendant owed him a duty to exercise reasonable care in designing, implementing, maintaining, monitoring, and testing its networks, systems, protocols, policies, procedures, and practices to ensure that Plaintiff's Private Information was adequately secured from impermissible access, viewing, release, disclosure, and publication.

55. This duty arose because Defendant, as a healthcare billing and revenue-cycle technology company, possessed and processed sensitive patient data, including claims data, insurance information, and patient billing records, on behalf of numerous medical providers and health systems. Plaintiff alleges that Defendant had a specific duty to protect this information from foreseeable cyber threats, including ransomware attacks and unauthorized exfiltration by third parties.

56. Defendant breached its duty of care by failing to exercise reasonable care in obtaining, retaining, securing, safeguarding, and protecting the Private Information in its possession. Specifically, Defendant failed to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's Private Information against the known risks of cyberattacks.

57. Defendant further breached its duty by failing to adequately monitor the security of its networks and systems to detect unauthorized access or data exfiltration. Defendant also failed to implement processes to quickly detect a data breach, security incident, or intrusion involving its networks and servers.

58. Defendant breached its duty by failing to have appropriate procedures in place to detect and prevent the dissemination of Plaintiff's Private Information. Defendant's failure to secure its systems allowed a cybercriminal group, identified as "Pear," to allegedly compromise Defendant's systems and post a claim of responsibility on a dark web leak site in September 2026.

59. Defendant breached its duty to timely disclose to Plaintiff that the Private Information within Defendant's possession might have been compromised. As of the date of this filing, Defendant has not publicly confirmed the incident, and the specific categories of information exposed remain unknown, preventing Plaintiff from taking immediate protective measures.

60. Defendant breached its duty by failing to ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards. Defendant's failure to implement proper data security procedures to adequately and reasonably protect Plaintiff's Private Information violated industry standards and the expectations of those who entrusted their data to Defendant.

61. As a direct and proximate result of Defendant's negligent conduct, Plaintiff has suffered and will continue to suffer injury, including the loss of the confidentiality of his Private Information, the imminent threat of identity theft, fraud, and abuse, and the loss of the opportunity to control how his Private Information is used.

62. Plaintiff has suffered and will continue to suffer out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and unauthorized use of his Private Information, including expenses for credit monitoring, credit freezes, and time spent scrutinizing financial accounts and credit reports.

63. Plaintiff has suffered and will continue to suffer emotional distress, anxiety, and loss of privacy resulting from the unauthorized disclosure of his sensitive healthcare and billing information. Plaintiff has also suffered lost opportunity costs associated with the effort expended to address and attempt to mitigate the actual present and future consequences of the Data Breach.

64. As a direct and proximate result of Defendant's negligence, Plaintiff is entitled to recover actual, consequential, and nominal damages, including compensation for economic losses, emotional distress, and the costs incurred to mitigate the harm.

65. Plaintiff further seeks injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect Plaintiff's Private Information, including engaging third-party auditors to test its systems, regularly testing for security vulnerabilities, and implementing an education and training program for its employees regarding cybersecurity.

## SECOND CLAIM FOR RELIEF
**Negligence Per Se**
**(On Behalf of Plaintiff and the Class)**

66. Defendant owed Plaintiff a duty to exercise reasonable care in safeguarding Plaintiff's private information, including healthcare billing records, insurance data, and patient identifiers, entrusted to Defendant in its capacity as a healthcare billing and revenue-cycle technology provider. This duty arises from applicable statutes and regulations governing the protection of sensitive personal and health information, as well as from industry standards and the foreseeable risks associated with the storage and processing of such data.

67. Defendant breached this duty by failing to adopt, implement, and maintain adequate security measures to protect Plaintiff's private information from unauthorized access, disclosure, or theft. Specifically, Defendant failed to exercise reasonable care in designing,

implementing, and maintaining its networks, systems, and protocols to prevent the intrusion publicly reported in September 2026.

68. Defendant further breached its duty by failing to implement processes to quickly detect a data breach, security incident, or intrusion involving its networks and servers, and by failing to promptly notify Plaintiff of any breach that affected his private information. Defendant's failure to timely disclose the compromise of Plaintiff's information, or to provide notice of the specific categories of data exposed, violated its duty of care.

69. Defendant's breach of its duty of care was the direct and proximate cause of the theft of Plaintiff's private information and the resulting damages. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered and will continue to suffer injury, including but not limited to: (i) the loss of the confidentiality of his private information; (ii) the risk of identity theft, fraud, and abuse; (iii) the cost of monitoring his financial accounts and credit reports; (iv) the cost of placing freezes or alerts on his credit; and (v) the time and effort expended to mitigate the consequences of the breach.

70. As a direct and proximate result of Defendant's negligence per se, Plaintiff is entitled to recover actual, consequential, and nominal damages, including compensation for out-of-pocket expenses, lost opportunity costs, and the reasonable value of time spent addressing the breach.

**THIRD CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

71. Defendant entered into an implied contract with Plaintiff and the Class by accepting their sensitive personal and medical information for the purpose of billing and revenue-cycle management, with the implicit promise to reasonably safeguard that data against unauthorized access, theft, or disclosure.

72. As a direct and proximate result of Defendant's breach of this implied contract, Plaintiff and the Class have suffered and will continue to suffer ongoing, imminent, and impending threats of identity theft, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

73. Plaintiff and the Class would not have entrusted such sensitive personal and medical information to Defendant, directly or indirectly, in the absence of Defendant's promise to adequately safeguard the data.

74. Defendant breached the implied contracts it entered into with Plaintiff and the Class by failing to provide reasonable data security measures and by failing to safeguard and protect their personal information.

75. Defendant breached its implied contract by failing to exercise reasonable care in designing, implementing, maintaining, monitoring, and testing its networks, systems, protocols, policies, procedures, and practices to ensure that Plaintiff's and Class Members' Private Information was adequately secured from impermissible access, viewing, release, disclosure, and publication.

76. Defendant breached its implied contract by failing to protect Plaintiff's and Class Members' Private Information in its possession using reasonable and adequate security procedures and systems.

77. Defendant breached its implied contract by failing to implement processes to quickly detect a data breach, security incident, or intrusion involving its networks and servers.

78. Defendant breached its implied contract by failing to provide timely and accurate notice to Plaintiff and the Class that their personal information was compromised as a result of the Data Breach.

79. Defendant breached its implied contract by failing to adequately train its employees to not store Private Information longer than absolutely necessary and by failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's Private Information.

80. Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats, including the specific threat of ransomware attacks targeting healthcare billing vendors.

81. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

82. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

83. Plaintiff and Class Members conferred a benefit upon Defendant by providing Defendant with their Private Information.

84. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and Class Members. Defendant benefited from the receipt and use of Plaintiff's and Class Members' Private Information to facilitate its business operations and derive profit.

85. Plaintiff and Class Members reasonably understood that Defendant would employ adequate cybersecurity measures to protect the Private Information they were required to provide, based on Defendant's duties under applicable state and federal law and its own internal policies.

86. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security, Defendant calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures, or by failing to implement necessary safeguards against the ransomware attack vector identified in September 2026.

87. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class Members' Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and Class Members would not have provided their Private Information to Defendant had they known Defendant would not adequately protect their Private Information.

88. Plaintiff and Class Members have no adequate remedy at law.

89. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and the Data Breach it caused.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

A. Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

B. Enter judgment in favor of Plaintiff and the Class;

C. Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and Class members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

D. Award all actual, general, special, incidental, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiff and Class members are entitled;

E. Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F. Award Plaintiff and Class members pre- and post-judgment interest as provided by law;

G. Enter such other orders as may be necessary to restore to Plaintiff and Class members any money and property acquired by Defendant through its wrongful conduct;

H. Award Plaintiff and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

I. Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

Dated: October 15, 2026

Respectfully submitted,

*/s/ Nickolas J. Hagman*
Nickolas J. Hagman (Wis. Bar 1085424)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, IL 60603
Telephone: (312) 782-4880
Email: nhagman@caffertyclobes.com

Christian Levis (*pro hac vice* forthcoming)
Amanda G. Fiorilla (*pro hac vice* forthcoming)
Michi Rodriguez (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
Email: clevis@lowey.com
Email: afiorilla@lowey.com
Email: mrodriguez@lowey.com

Anthony M. Christina (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
Email: achristina@lowey.com